

**FILED**

**FEBRUARY 12, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VALUECLICK, INC.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **GUY RUDLOFF,** | ) | **JURY TRIAL DEMANDED**   **08 C 904** |
| | ) | |
| **Defendant** | ) | |

**JUDGE ASPEN**
**MAGISTRATE JUDGE COX**

### VERIFIED COMPLAINT

Plaintiff ValueClick, Inc. ("ValueClick") files this Complaint against Defendant Guy Rudloff ("Rudloff") seeking temporary, preliminary, and permanent injunctive relief to remedy Rudloff's misappropriation of ValueClick's trade secrets and confidential information.

### THE PARTIES

1.      ValueClick is a Delaware corporation with a principal place of business at 30699 Russell Ranch Road, Suite 250, Westlake Village, California 91362.  ValueClick is a publicly traded online marketing services company (NASDAQ: VCLK), and a leading provider of targeted online advertising to a wide variety of online advertisers, publishers, and consumers (including those residing in this judicial district).  ValueClick offers online advertisers and publishers a variety of products and services that enable marketers to advertise and sell their products through various online marketing channels. ValueClick also offers technology and services that enable advertisers to manage, track, and analyze a range of online marketing programs. ValueClick also offers a wide variety of additional technology and services relating broadly to online advertising provision and

management.  ValueClick is, and has been, one of the innovators in online advertising and is a leader in the provision and servicing of online advertising.

2.     Rudloff is a resident and citizen of the state of Illinois, residing at 857 N. Wood Street, Number 3, Chicago, Illinois 60622.  During his employment at ValueClick, Rudloff worked as the Regional Sales Manager of Midwest Sales working out of ValueClick's Chicago sales office located at 30 S. Wacker Drive, Suite 2200, Chicago, Illinois 60606.  Rudloff held this position from September 25, 2007 to January 22, 2008. Rudloff's duties included a combination of management of existing accounts, creation of and marketing for new business, and management of the Chicago team coordinating sales in the Midwest.  His duties included access to ValueClick trade secrets and confidential information, including sales and marketing information such as contact list, conference attendee lists, sales figures, information on prior marketing efforts of ValueClick clients and prior usage of ValueClick products and services.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (c) because it is a suit between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4.     Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) and (2) because the defendant resides in this district, the events and omissions giving rise to the claims occurred in this district, the subject of the action is located in this district.

## STATEMENT OF FACTS
## BACKGROUND

5.     ValueClick is a leading provider of online advertising and marketing services and products.  ValueClick is the world's largest independent online advertising

company .  As a part of its business, ValueClick provides a wide variety of clients with advertising services.  Advertising is a highly sales-intensive business, and ValueClick has spent substantial amounts of time, money and resources in collecting the marketing information necessary to promote its products and services.  In particular, ValueClick sponsors events for members of the advertising industry, collects information regarding usage of ValueClick services and products, and collects a wide variety of marketing information in order to support its sales efforts.  This marketing information includes customer lists, contact lists, organizational information for ValueClick's business partners, revenue and sales reports, sales resources, and information regarding prior sales, including amounts spent, identity of contacts, what services were purchased by prior and current customers, and how much money was spent on those services.  This information is core to marketing and sales of ValueClick's business, and, next to the computer software running ValueClick's products, is the most valuable confidential information held by the company.

## CONFIDENTIALITY

6.     ValueClick takes great care to maintain the confidential and trade secret nature of its marketing and business information.  Because of the confidential nature of much of the information handled by ValueClick personnel, all personnel, including Rudloff, are required to sign a Confidential Information and Invention Assignment Agreement.  Confidential information is addressed in ValueClick's Code of Ethics, and employees on termination are required to certify that (a) they have not kept or failed to return confidential information, (b) have complied with the Confidential Information and Invention Assignment Agreement, and (c) have returned all confidential and proprietary

information of ValueClick.  In addition, ValueClick requires that all employees maintain password protection on their desktop computers, and that the passwords be changed every ninety days.  This is enforced by software which requires the employees to change their passwords every ninety days. Individual files on ValueClick servers are often protected by a second password.  ValueClick's standards and procedures are designed to limit access and to ensure that information contained in them is disclosed solely to employees or those who have a business-based need to know such information

7.     In this particular case, Rudloff agreed as follows, in Rudloff's signed Confidential Information and Invention Assignment Agreement (attached hereto as Exhibit A):

> "I agree, at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company or to disclose to any person, firm or corporation without written authorization of the Company, any Confidential Information of the Company. Disclosure should be limited to third parties with whom Company has a non-disclosure agreement in place and which has been approved by the Company's Legal Department. I understand that "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer, vendor and contractor lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved." Exhibit A, paragraph 1(a).

8.     Further, Rudloff agreed to the following, with respect to third-party information:

"I recognize that the Company has received and in the future will receive from third-parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third-party." Exhibit A, paragraph 1(c).

9.      In addition, ValueClick expressly addresses confidential information in its Code of Ethics, a copy of which Rudloff received, and to which he agreed to adhere. A copy of the section of the Code of Ethics dealing with confidential information is attached hereto as Exhibit B. Exhibit C is Rudloff's signed receipt and acknowledgement of the document distribution, including the Code of Ethics. Rudloff agreed to abide by the Code of Ethics, which states:

"As an employee, you may have access to proprietary and confidential information concerning the Company's business and the business of the Company's clients and suppliers. Proprietary and confidential information may include any documents or information concerning the Company's business that is not generally known to the public that could be valuable to the Company's competitors which the Company takes reasonable measures to protect. You are required to keep such information confidential during your employment as well as thereafter, and not to use, disclose or communicate that confidential information other than in your role as an employee and subject to a confidentiality agreement approved by the Legal Department." Exhibit B, p. 8.

10.     Finally, the Code of Ethics states:

"As an employee, you may have access to proprietary and confidential information concerning the Company's business and the business of the Company's clients and suppliers. Proprietary and confidential information may include any documents or information concerning the Company's business that is not generally known to the public that could be valuable to the Company's competitors which the Company takes reasonable measures to protect. You are required to keep such information confidential during your employment as well as thereafter, and not to use, disclose or communicate that confidential information other than in your role as an employee and subject to a confidentiality agreement approved by the Legal Department." Exhibit B, p. 8.

### RUDLOFF'S EMPLOYMENT

10.     Rudloff began his employment at ValueClick on September 25, 2007 as the Regional Sales Manager of Midwest Sales.  His duties included generation of new business in the Midwest for ValueClick and its divisions, maintenance of relationships with ValueClick's existing clients in the Midwest, and management of ValueClick's Chicago sales team, marketing to the Midwest.

11.     As part of his employment, Rudloff was granted access to many of ValueClick's most critical confidential information.  This included among other things, prior client lists, contact lists, revenue reports, analyses of prior business activity, lists of registrants to ValueClick-sponsored events, descriptions of upcoming product lines, technical training on ValueClick's products and services, strategic planning documents.

12.     After ninety days, Rudloff was provided with his ninety day review.  In his review, on December 18, 2007, William Todd ("Todd"), his immediate superior, advised Rudloff that he was not meeting expectations, and that he would have one month to turn things around.  In particular, Rudloff was not meeting expected sales numbers, was not servicing ValueClick's existing clients, was arriving late to work, disappearing for unexplained periods during the day, filing expense reports late, and otherwise failing to meet expectations.  Todd scheduled a followup for mid-January, 2008, and offered ValueClick's support in helping turn things around for Rudloff.  In addition to a personal meeting with Todd, Rudloff was provided with a written evaluation.

13.     Unfortunately, things did not turn around.  By mid-January, Rudloff's performance had not altered.  In fact, during the entire period of his employment at ValueClick, Rudloff did not generate even one piece of new business, despite this being

his primary responsibility.  On January 22, 2008, Todd flew from New York to Chicago to meet with Rudloff.

## RUDLOFF'S TERMINATION AND MISAPPROPRIATION

13.    On January 22, 2008, Todd arrived in the Chicago office of ValueClick before 9:00 a.m., unannounced.  At approximately 8:45 a.m., Rudloff arrived.  Upon his arrival, Todd requested that Rudloff meet with him.  Rudloff asked for a few minutes to take care of some things, and went into his office.  Beginning at 9:01 a.m., while there, Rudloff sent five e-mails from his office account to his home e-mail account.  These e-mails included twenty-nine attachments.  While some of the attachments were personal in nature, many attachments also included ValueClick confidential information.  They included trip reports, guest lists and rosters for ValueClick-sponsored events, address lists, an internal organization chart for a ValueClick partner, a document describing all of ValueClick Media's business units, and contacts in those units, a needs assessment form, a list of sales resources for ValueClick, and ValueClick Media's Midwest business strategy documentation for the first quarter of 2008.  This last document included a wide variety of critical and highly confidential ValueClick information, including goal billings, actual billings for prior years, key strategic accounts, key verticals, historical performance data and specific Midwest strategy for the coming year.

14.    Rudloff then met with Todd.  At that meeting, Todd explained to Rudloff that he was being terminated.  In addition, Todd reminded Rudloff of the company's confidentiality policies, to which Rudloff had agreed, and requested that Rudloff sign the company's Termination Certification.  Todd reminded Rudloff that he was not permitted

to take any of ValueClick's confidential information.  Rudloff agreed, and signed the

Termination Certification.  A copy is attached hereto as Exhibit D.

15.     In critical part, the Termination Certification states that Rudloff did not

have in his possession any of the Company's confidential information, and was compliant

with ValueClick's policies and procedures:

> "I do not have in my possession, nor have I failed to return, any devices,
> records, data, notes, reports, notebooks, customer or contact lists,
> proposals, lists, emails, correspondence, specifications, drawings,
> blueprints, sketches, materials, equipment, other documents or property, or
> reproductions of any aforementioned items belonging to ValueClick
> Incorporated, its subsidiaries, affiliates, successors or assigns (collectively,
> the "Company").
>
> During my employment, I have complied with all the terms of the
> Company's Employment, Confidential Information and Invention
> Assignment Agreement signed by me, including the reporting of any
> Inventions and original works of authorship (as defined therein),
> conceived or made by me (solely or jointly with others) covered by that
> agreement.
>
> I am in compliance with the Employment, Confidential Information and
> Invention Assignment Agreement, I will preserve as confidential all trade
> secrets, confidential knowledge, data or other proprietary information
> relating to products, processes, know-how, designs, formulas,
> developmental or experimental work, computer programs, databases, other
> original works of authorship, customer lists, business plans, financial
> information or other subject matter pertaining to any business of the
> Company or any of its employees, clients, consultants or licensees.
>
> I have returned all confidential and proprietary information and Company
> property in my possession."  Exhibit D, Section 1.

16.     Rudloff did not comply.  Immediately following his signing of the

Termination Certification, Rudloff returned to his office to collect his personal items.

While in his office, Rudloff sent three more e-mails from his office computer to his home

e-mail address, the final one time-stamped at 9:47 a.m.  These e-mails included thirteen

more attachments, again including critical and confidential information of ValueClick.

This time, Rudloff copied files including prior advertisers with ValueClick, client names and contact information, registration lists for ValueClick sponsored events, and, critically, detailed historical financial data for clients and agencies who had previously run promotions with ValueClick.

17.     In short, Rudloff interrupted his acts of trade secret misappropriation to meet with his superior and agree not to misappropriate ValueClick's trade secrets, then returned to his office to continue doing so.

### VALUECLICK'S DISCOVERY OF RUDLOFF'S MISAPPROPRIATION

18.     That afternoon, before departing the Chicago office, Todd inspected Rudloff's desk computer to ensure that no important matters had come in that morning which needed to be addressed.  In addition, Todd set up a forwarding and response program so that any further e-mails to Todd could be responded to or handled appropriately by the team at ValueClick.  During that review, Todd discovered the e-mails in Rudloff's sent e-mail folder which revealed Rudloff's misappropriation.

19.     Todd immediately contacted ValueClick's human resources team, and made them aware of the misappropriation.  They in turn consulted with Scott P. Barlow ("Barlow"), Vice President and General Counsel for ValueClick.  Barlow immediately contacted Rudloff in order to request the return or destruction of ValueClick's confidential information.

20.     Mr. Rudloff did not respond, and did not agree to return or destroy his copies of ValueClick's confidential information.

## RUDLOFF'S CONTINUING REFUSAL TO REMEDIATE

21.     From January 23 to the present, ValueClick has attempted to contact Rudloff and arrange for the return or destruction of its confidential information.  These attempts have included phone calls from ValueClick's general counsel, Barlow, from his superior, Todd, and written communication from Melissa Dunn on February 4, 2008, and a followup telephone call from Todd on February 6, 2008 requesting that Rudloff confirm in writing that he had taken the information, but assuring ValueClick that he had destroyed the information, deleted it from his computer, and that he would not use the information for his own personal gain or for any future employer in any manner whatsoever.  A copy of the proposed Declaration is attached hereto as Exhibit E.

22.     Rudloff did not respond to any of these requests, and has, to date, not agreed to destroy the information or refrain from using it for his own personal gain, or for any future employer.

## HARM TO VALUECLICK

23.     Rudloff's retention and use of the information improperly taken from ValueClick will cause ValueClick to suffer irreparable injury which can only be avoided by enjoining Rudloff from retaining or using the information taken from ValueClick.  By virtue of Rudloff's unlawful conduct described above, ValueClick has already suffered serious economic and business injury, and, if use or retention of the material is not enjoined, ValueClick faces further injury which is immediate and irreparable.  In addition, if Rudloff becomes employed for a competitor of ValueClick, and uses the information he has unlawfully obtained in support of efforts to take business from ValueClick, ValueClick will further suffer additional economic and business injury.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS

24.     ValueClick incorporates by reference paragraphs 1 through 22 of its Verified Complaint.

25.     Rudloff, by the conduct described above, has engaged in actual misappropriation of ValueClick's trade secrets in violation of the Illinois and/or California Trade Secrets Acts in that Rudloff has acquired ValueClick's confidential and trade secret information knowing that he acquired that information by improper means.

26.     ValueClick has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Rudloff is enjoined as requested below.

27.     Greater injury will be inflicted on ValueClick by denial of this relief than will be inflicted on Rudloff by the granting of this relief.

28.     ValueClick also seeks damages for Rudloff's misappropriation in excess of $75,000, in addition to its attorneys' fees in seeking relief.

29.     Because the misappropriation was both willful and malicious, ValueClick also seeks exemplary damages in the amount of twice the amount of damages awarded to it, as well as reasonable lawyer's fees.

**WHEREFORE,** ValueClick requests the following relief:

a.     That Rudloff be enjoined from using or disclosing to anyone, including but not limited to post-ValueClick employers or potential employers, their officers, employees, agents, representatives, contractors, customers and prospective customers, the trade secrets and confidential information of ValueClick, and more particularly any attachment Defendant emailed to himself on or around January 22, 2008, and any other sales channel related information of ValueClick, Inc.

b.      That Rudloff and all other persons or entities acting in concert with him or on his behalf, be enjoined from directly or indirectly using, disclosing or retaining any proprietary, confidential or trade secret information of ValueClick.

c.      That Rudloff shall return to counsel for ValueClick any and all documents, electronic or digital files prepared during, arising from, or containing information related to ValueClick, Defendant's employment with ValueClick and his business activities on behalf of ValueClick including, but not limited to, all originals and copies of such documents, and all computer diskettes or other data storage media containing such information and certify that he has returned all such information and that he has not retained any copies of such information regardless of the form of the information (e.g., original document, hard copy of document, facsimile copy, electronic email or image).

d.      A judgment in ValueClick's favor and against Rudloff for monetary damages, including, but not limited to, all amounts necessary to compensate ValueClick for Rudloff's wrongful activities, including reasonable attorneys' fees and costs.

e.      A judgment in ValueClick's favor and against Rudloff for exemplary damages for his wilfull and malicious conduct.

f.      That this Court order such other and further relief as it deems appropriate.

Respectfully submitted,
ValueClick, Inc.

/s/ William W. Flachsbart
William W. Flachsbart
Flachsbart & Greenspoon, LLC
53 W. Jackson Blvd., Suite 652
Chicago, Illinois 60604
Phone: (312) 431-3800, Fax: (312) 431-3810

Counsel for Plaintiff,
ValueClick, Inc.