ValueClick

VALUECLICK, INC.

CONFIDENTIAL INFORMATION AND
INVENTION ASSIGNMENT AGREEMENT

As a condition of my employment with ValueClick, Inc., its subsidiaries, affiliates, successors or assigns (collectively, the **"Company"**), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following:

**1. Confidential Information.**

(a) Company Information. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company. I understand that **"Confidential Information"** means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer, vendor and contractor lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

(b) Former Employer Information. I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring into the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) Third Party Information. I recognize that the Company has received and in the future will receive-from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

**2. Inventions.**

(a) Inventions Retained and Licensed. I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as **"Prior Inventions"**), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such



**Exhibit A**

Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product,
process or machine a Prior Invention owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

(b) Assignment of Inventions. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as **"Inventions"**), except as provided in Section 2(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are 'works made for hire," as that term is defined in the United States Copyright Act.

(c) Inventions Assigned to the United States. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full tide is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) Maintenance of Records. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e) Patent and Copyright Registrations. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all -other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) Exception to Assignments. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B).

I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A.

3. **Non-Competition.** I agree that, during the term of my employment with the Company, I will not at any time own and interest in, join, operate, control, participate in or be connected, as an officer, director, manager, employee, agent, independent contractor, consultant, member, partner, shareholder (except as a shareholder or a corporation in the management and affairs of which the Employee has no control and which is the issuer of shares that are actively traded in a national securities market) or principal, with any corporation, limited liability company, partnership, joint venture, proprietorship, association or other entity or person engaged in developing, producing, designing, providing, soliciting orders for, selling, distributing or marketing products or services that directly or indirectly compete with the Company's products, services or other business, in any markets in which the Company is now doing business, contemplates doing business or does business during my employment, or directly or indirectly take or permit any action in preparation to do any of the foregoing.

4. **Conflicting Employment.** I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting other business activity directly related to the business in which the Company and/or its customers are now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5. **At-Will Employment.** I understand that my employment with the Company is "at will" and is for no specified term. As a result, I understand that the Company can terminate my employment at any time and that, similarly, I am free to terminate my employment with the Company at any time.

6. **Returning Company Documents.** I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. In the event of the termination of my employment, I agree to sign and deliver the **"Termination Certification"** attached hereto as Exhibit C.

7. **Notification to New Employer.** In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

8. **Solicitation of Employees.** I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

9. **Conflict of Interest Guidelines.** I agree to diligently adhere to the Conflict of Interest Guidelines attached as Exhibit D hereto.

10. **Representations.** I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

11. **Choice of Law and Venue.** It is agreed that any dispute or controversy arising out of relating to any interpretation, construction, performance or breach of this Agreement, shall be exclusively governed by California law without respect to conflict of law provisions. The parties further agree to submit to personal jurisdiction in the courts of the State of California as such courts shall serve as the exclusive venue for all dispute resolution. The prevailing party of any litigated dispute arising out of or relating in any way to this Agreement shall receive its reasonable attorney's fees, together with its costs and expenses incurred resolving the dispute as part of the judgment.

12. **Equitable Remedies.** I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 1, 2, 3, and 5 herein. I further agree that a breach of my obligations and representations and warranties made herein would result in irreparable harm to the Company. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining, such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

13.. **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification for amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

14. **Severability.** If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

15. **Successors and Assigns.** This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

**AGREED TO AND ACCEPTED:**

Employee's Signature

Date: ______________________

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP**

| **Title** | **Date** | **Identifying Number or Brief Description** |
|---|---|---|

X No inventions or improvements

______ Additional Sheets Attached

Signature of Employee: ________________________

Print Name of Employee: Guy Rudloff

Date: ________________________

**EXHIBIT B**

**CALIFORNIA LABOR CODE SECTION 2870**
**EMPLOYMENT AGREEMENTS; ASSIGNMENT OF RIGHTS**

"(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

**EXHIBIT C**

**VALUECLICK, INC.**

**TERMINATION CERTIFICATION**

1. Confidential Information. I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, notebooks, customer or contact lists, proposals, lists, emails, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to ValueClick Incorporated, its subsidiaries, affiliates, successors or assigns (collectively, the "Company").

During my employment, I have complied with all the terms of the Company's Employment, Confidential Information and Invention Assignment Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I am in compliance with the Employment, Confidential Information and Invention Assignment Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I have returned all confidential and proprietary information and Company property in my possession.

2. Non-Solicitation. I acknowledge and agree that for a period of twelve (12) months after my termination, I will not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity. In addition, for the same period, I am aware that the Company has proprietary relationships with publishers that make up its Network and I agree not to solicit, induce, recruit, or encourage, directly or indirectly, any publisher that Employee knows, or has reason to know is a publisher on the Network for purpose of offering to such publisher products or services that compete with those of the Company, including, without limitation, the placement or hosting of advertising in any form without the express, written consent of the Company.

3. No Cooperation. I agree that I will not counsel or assist any attorneys or their clients in the presentation or prosecutions of any dispute difference, grievances, claims, charges or complaints by any third party against the Company and/or any officer, director, employee, agent representative, shareholder or attorney of the Company unless under a subpoena or other court order to do so.

4. Mutual Non-Disparagement. The Company and I agree not to disparage each other. I will not contact any of the Company's publishers or outside vendors with whom I worked or became aware of

during my employment to discuss the reasons for my resignation. If I am contacted by any outside vendor or publisher of the Company, I shall only state that I have resigned from the Company.

______________________________

Employee's Signature)

______________________________

(Type/Print Employee's Name)

Date: ______________________________

**EXHIBIT D**

**VALUECLICK, INC.**

**CONFLICT OF INTEREST GUIDELINES**

It is the policy of ValueClick Incorporated, its subsidiaries, affiliates, successors or assigns (collectively, the "Company") to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all officers, employees and independent contractors must avoid activities, which are in conflict, or give the appearance of being in conflict, with these principles and with the interests of the Company. The following are potentially compromising situations, which must be avoided. Any exceptions must be reported to the President and written approval for continuation must be obtained.

1. Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended. (The Employment, Confidential Information and Invention Assignment Agreement elaborates on this principle and is a binding agreement.)

2. Accepting or offering substantial gifts, excessive entertainment, favors or payments may be deemed to constitute undue influence or otherwise be improper or embarrassing to the Company.

3. Initiating or approving personnel actions affecting reward or punishment of employees or applicants where there is a family relationship or is or appears to be a personal or social involvement.

4. Initiating or approving any form of personal or social harassment of employees.

5. Investing or holding outside directorships in suppliers, customers or competing companies, including financial speculation, where such investment or directorship might influence in any manner a decision or course of action of the Company.

6. Borrowing from or lending to employees, customers or suppliers.

7. Acquiring a real estate interest adverse to the Company.

8. Improperly using or disclosing to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity with whom obligations of confidentiality exist.

9. Unlawfully discussing prices, costs, customers, sales or markets with competing companies or their employees.

10. Making any unlawful agreements with distributors with respect to prices.

11. Improperly using or authorizing the use of any inventions which are the subject of patent claims of any other person or entity.

12. Engaging in any conduct which is not in the best interest of the Company.

Each officer, employee and independent contractor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of higher management for review. Violations of this conflict of interest policy may result in discharge without warning.